303 Ga. 482
FINAL COPY

S18A0116.  RHODEN v. THE STATE.

HINES, Chief Justice.

Following the denial of his motion for new trial, as amended, Tefflon Derron Rhoden appeals his convictions for malice murder, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon in connection with the fatal shooting of Emmanuel Opoku-Afari.  Rhoden's sole challenge is that trial counsel was ineffective in two respects:  in failing to move for a mistrial based on an alleged admission by the prosecutor of racial and gender discrimination during jury selection, and in not moving for a severance of Rhoden's trial from that of his co-defendant, Tariq Smith.  Finding the challenge to be unavailing, we affirm.[1]

---

[1] The crimes occurred on October 12, 2010.  On May 22, 2012, a Fulton County grand jury indicted Rhoden, along with Tariq Smith and Anthony Norris, for malice murder, two counts of felony murder, aggravated assault with a deadly weapon, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a felony. Rhoden and Smith were also charged with a third count of felony murder and possession of a firearm by a convicted felon.  Norris pled guilty to voluntary manslaughter pursuant to a negotiated agreement with the State. Rhoden was tried jointly with Smith before a jury April

1. At Rhoden's and Smith's trial, Smith was convicted of felony murder and other crimes, and we affirmed in part, vacated in part, and remanded the case for resentencing. *Smith v. State*, 298 Ga. 357 (782 SE2d 26) (2016). In that appeal, we summarized the evidence presented at the joint trial as follows:

> Viewed in the light most favorable to the verdict[s], the evidence shows that, on October 12, 2010, Smith sold a television to Opoku-Afari. During the transaction, Smith noticed that Opoku-Afari seemed to have a lot of money, and he devised a plan to rob him. Later that day, Smith discussed his plan with Anthony Norris and . . . Rhoden, who agreed to assist Smith with the robbery. Traveling together in Norris's truck, the three men located Opoku-Afari, and they followed him to his apartment in south Fulton County. But when the three men approached Opoku-Afari with guns, Rhoden apparently became afraid that the victim might "try to do something," and he shot the victim in the head before the robbery could take place. The men fled the scene . . . .

11-18, 2013. Rhoden was found guilty of all charges; Smith was acquitted of malice murder but found guilty on all remaining charges. On April 19, 2013, Rhoden was sentenced to life in prison for malice murder and two consecutive terms of five years in prison for possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon. The trial court ruled that the remaining counts either merged for the purpose of sentencing or stood vacated by operation of law, and those rulings have not been challenged. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Trial counsel filed a motion for new trial on Rhoden's behalf on May 9, 2013, and the motion was amended by new counsel on March 2, 2015. The motion for new trial, as amended, was denied on June 2, 2015. A notice of appeal was filed on June 9, 2015, and the case was docketed in this Court for the term beginning in December 2017. The appeal was orally argued on January 22, 2018.

Id. at 358 (1). Rhoden does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, construed to support the verdicts, the evidence presented at trial was sufficient to authorize a rational trier of fact to find Rhoden guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), Rhoden "must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense." *Daniels v. State*, 302 Ga. 90, 93 (2) (805 SE2d 80) (2017). "While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one." *Faust v. State*, 302 Ga. 211, 217 (4) (805 SE2d 826) (2017) (citation and punctuation omitted). For Rhoden to prove deficient performance, he must show that "his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide

3

range of reasonable professional performance." *Capps v. State*, 300 Ga. 6, 8 (2) (792 SE2d 665) (2016) (citation and punctuation omitted). Even though Rhoden's trial counsel died prior to the hearing on the motion for new trial, Rhoden still must overcome this presumption and is not relieved of his heavy burden of proving ineffective assistance. See *Jones v. State*, 296 Ga. 561, 564 (2) (769 SE2d 307) (2015); *Hicks v. State*, 295 Ga. 268, 276 (3) (b), n. 7 (759 SE2d 509) (2014). The reasonableness of counsel's conduct must be evaluated "from counsel's perspective at the time of trial and under the particular circumstances of the case, and decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Daniels*, 302 Ga. at 94 (2) (citation omitted). To prove prejudice to his defense, Rhoden "must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different." Id. "If the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the *Strickland* test, this Court is not required to examine the other." *Capps*, 300 Ga. at 8 (2) (citation and punctuation omitted).

4

(a) In Smith's appeal, we rejected his claim that the trial court erred when, after the evidence was closed, it removed one of the jurors due to his violation of the court's instruction not to do any independent investigation and due to the court's concerns about the juror's impartiality given a business relationship with Smith's attorney.  See *Smith*, 298 Ga. at 359-360 (3) (holding that both of these reasons were sound and that the trial court did not abuse its discretion).  Before the juror at issue was individually questioned, the trial court recognized that he was "the only black man on our jury."  After the juror was questioned, the trial court discussed the matter with the parties, and the prosecutor said the following:

> I would also submit for the record that the court expressed concern regarding the fact that he is the only African-American male in this case.  The defendants are entitled, as the court is aware, to a cross-section of the community.  I mean, even if there's not a black juror on the jury panel that sits and considers the evidence, under the law that would not give rise to an issue with respect to going forward. *So I certainly appreciate the fact that he is a black male on the case.  One of the reasons why I selected him initially.*  I didn't — you know, when he indicated that he could be fair, I accepted that as true.  And you know, *I want black males on the jury.*  But at the end of the day, if he was struck from this jury as a result of the violation of the court's orders, it would not be a violation of the defendant's constitutional rights to a fair and impartial trial.

5

(Emphasis supplied.) Rhoden asserts that his trial counsel should have moved for a mistrial because the language emphasized above amounts to an admission by the prosecutor that he had discriminated based on race and gender during jury selection in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), and *J. E. B. v. Alabama*, 511 U. S. 127 (114 SCt 1419, 128 LE2d 89) (1994).

To succeed on this claim, Rhoden was required to show both "that trial counsel should have raised a *Batson* challenge [and] that the challenge would have been successful." *Downey v. State*, 298 Ga. 568, 573 (4) (a) (783 SE2d 622) (2016) (citation and punctuation omitted). Under *Batson* and *J. E. B.*, "it is unconstitutional for a prosecutor or defense counsel to exercise a peremptory challenge to a prospective juror because of the juror's race or gender." *Robinson v. State*, 278 Ga. 134, 135 (1) (598 SE2d 466) (2004). In this case, however, Rhoden does not claim that the prosecutor exercised any peremptory challenge in a discriminatory manner. Instead, Rhoden argues that counsel's discrimination consisted in his acceptance of a juror and purposely not striking that juror.

6

Rhoden cannot establish deficient performance by trial counsel for failing to make a motion for mistrial premised on *Batson* and *J. E. B.* when he has failed to present, and neither the State nor this Court has been able to find, any authority that extends *Batson* and its progeny to a prosecutor's decision not to strike a prospective juror who is then seated on the jury. See *Propst v. State*, 299 Ga. 557, 565 (3) (a) (788 SE2d 484) (2016) (holding that because the defendant "fail[ed] to present any compelling authority questioning the constitutionality of [a statute], he cannot establish deficient performance by trial counsel for failing to challenge the same"). There is precedent that addresses a variety of *Batson* issues, such as the remedy for a trial court's mistaken application of *Batson* to deny a peremptory challenge. See *Rivera v. Illinois*, 556 U. S. 148 (129 SCt 1446, 173 LE2d 320) (2009); *United States v. Williams*, 731 F3d 1222, 1234-1236 (11th Cir. 2013). Other precedent addresses whether it is a violation of *Batson* for a prosecutor to *strike* one prospective juror in an effort either to achieve race and gender balance on the jury or to secure the service of another prospective juror of a particular race and gender. See *Rice v. Collins*, 546 U. S. 333, 336, 340-341 (126 SCt 969, 163 LE2d 824) (2006); *Ray-Simmons v. State*, 132 A3d 275, 284-285 (Md. 2016). But we have not located

7

or been informed of any precedent or rationale that extends *Batson* or *J. E. B.* or their remedies to a *prosecutor's* mere *non*-exercise of a peremptory strike. And "there is no requirement for an attorney to prognosticate future law in order to render effective representation." *Amos v. State*, 298 Ga. 804, 809 (3) (783 SE2d 900) (2016) (citation and punctuation omitted). Counsel is not obligated "to argue beyond existing precedent." *Lyman v. State*, 301 Ga. 312, 321 (3) (a) (800 SE2d 333) (2017) (citation and punctuation omitted).

In light of the absence of supporting precedent, Rhoden's trial counsel might well have concluded that there was not a good-faith basis for a *Batson* motion. Moreover, when removal of the juror at issue was discussed, counsel specifically requested that he be allowed to continue on the jury. Rhoden has failed to show that his trial counsel did not have a strategy that was a reasonable one for a competent attorney to pursue. See *Head v. Ferrell*, 274 Ga. 399, 409 (V) (C) (3) (554 SE2d 155) (2001). Because Rhoden has not met his burden of proving that his trial counsel's performance was deficient in failing to move for a mistrial based on *Batson* and *J. E. B.*, we need not address whether any deficiency was prejudicial to Rhoden's defense.

(b) Rhoden also contends that his trial counsel was ineffective in failing to move for a severance of his trial from Smith's so that counsel could have called Smith as a witness to testify that Rhoden was not a passenger in the pickup truck used to travel to the location where the murder occurred. To obtain a severance on the ground that a co-defendant would give exculpatory evidence in a separate trial, the defendant must demonstrate, among other things, "that the co-defendant will in fact testify if the cases are severed." *Westmoreland v. State*, 287 Ga. 688, 694 (5) (699 SE2d 13) (2010) (citation and punctuation omitted). See also *Marquez v. State*, 298 Ga. 448, 450 (2) (782 SE2d 648) (2016). Rhoden asserts that Smith's willingness to testify at a separate trial was evidenced by his testimony at the hearing on Rhoden's motion for new trial. At that hearing, however, Smith testified only that he remembered Norris and no one else being in the pickup truck with him before the murder. Rhoden proffered no evidence, such as testimony, affidavit, or prior recorded statement by Smith, demonstrating that Smith in fact would have testified at a separate trial. See *Westmoreland*, 287 Ga. at 694 (5); *Avellaneda v. State*, 261 Ga. App. 83, 88 (581 SE2d 701) (2003). Thus, Rhoden's assertion that he could have called his co-defendant as a witness at a separate trial was mere speculation, as

9

a co-defendant has no right to control the sequence of separate trials and Rhoden has not shown that Smith would not have invoked his right against self-incrimination. See *Lupoe v. State*, 300 Ga. 233, 242 (2) (c) (794 SE2d 67) (2016); *Long v. State*, 287 Ga. 886, 890 (3) (700 SE2d 399) (2010); *Avellaneda*, 261 Ga. App. at 88-89; Wayne R. LaFave et al., Criminal Procedure § 17.2 (c) (4th ed.). Accordingly, Rhoden has failed to prove either deficient performance or prejudice on this ineffectiveness claim. See *Lupoe*, 300 Ga. at 243 (2) (c).

Judgment affirmed. All the Justices concur.

Decided April 16, 2018.

Murder. Fulton Superior Court. Before Judge Ellerbe.

Ivars Lacis, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.