309 Ga. 516
FINAL COPY

S20A0789.  GRIFFIN v. THE STATE.

PETERSON, Justice.

Antonio Griffin is appealing his convictions for malice murder and other crimes related to the 2015 shooting death of Mikell Wright and attempted robbery of Mikell's brother, Rodregus Wright.[1]

---

[1] The crimes occurred on May 31, 2015. Griffin was indicted along with Zykieam Redinburg and Tobias Daniels for malice murder, felony murder, armed robbery of Mikell Wright, and attempted armed robbery of Rodregus Wright; Redinburg and Griffin also were charged with possession of a firearm during the commission of a felony. Redinburg accepted a plea offer and testified for the State at the joint trial of Daniels and Griffin, held from August 28 to September 1, 2017. The jury found Griffin guilty of malice murder, felony murder, attempted armed robbery of Mikell (as a lesser-included offense of armed robbery), and attempted armed robbery of Rodregus; Griffin was found not guilty on the firearm possession count. On September 21, 2017, Griffin was sentenced to life imprisonment for malice murder, as well as a concurrent 15-year sentence for the attempted armed robbery of Mikell and a ten-year consecutive sentence for the attempted armed robbery of Rodregus; the felony murder count was vacated by operation of law. Daniels was sentenced to life imprisonment for malice murder, ten years concurrent for the attempted armed robbery of Mikell, and ten years consecutive (to serve five) for the attempted armed robbery of Rodregus; we affirmed Daniels's convictions and sentences last year. See *Daniels v. State*, 306 Ga. 559 (832 SE2d 372) (2019). Trial counsel filed a motion for new trial on the day Griffin was sentenced and a nearly identical motion on October 4, 2017; the motion was amended by appellate counsel on September 10, 2018, May 6, 2019, and July 23, 2019.

Griffin, who was 13 years old at the time of the crimes, argues on appeal primarily that his trial counsel rendered ineffective assistance for failing to object to testimony about tape-recorded conversations between Griffin and a friend who was also a minor. Because the argument that the testimony was inadmissible at best is novel, Griffin cannot show that trial counsel performed deficiently by failing to raise it. Griffin's only other argument on appeal is an argument about jury selection that we rejected last year in affirming the convictions of his co-defendant, Tobias Daniels, and reject again today. We therefore affirm.

Griffin was jointly tried with Daniels in 2017. In disposing of Daniels's appeal, we summarized the evidence presented at trial as follows:

> On May 31, 2015, a group of teenagers, including brothers Rodregus and Mikell Wright, proceeded toward a Chatham County apartment complex. Mikell went to the

---

Following a hearing, the trial court denied the motion in an order filed on October 3, 2019. Griffin's appellate counsel asked the trial court to set aside and reenter that ruling on the ground that it was never served on him, and the trial court reentered the order on November 20, 2019. Griffin filed a timely notice of appeal, and the case was docketed to this Court's April 2020 term and submitted for decision on the briefs.

home of the "candy man" just outside the complex to buy a lighter, while Rodregus pedaled his bicycle into the complex with Zyonnia Grant riding on the front.

. . . Griffin, Zykieam Redinburg, and Daniels were at the apartment complex, and, "after talk[ing] to some girls," together they made a plan to rob Rodregus. Griffin, Redinburg, and Daniels approached Rodregus and Grant, who both were still on Rodregus's bike. Griffin, Redinburg, and Daniels each had something covering part of their faces but were still recognizable. Redinburg pulled out a gun, pointed it at Rodregus's head, and ordered him to empty his pockets. Daniels, who also had a gun, went through Rodregus's pockets and said "go through his pockets" or "check his socks." The group was unable to obtain anything from Rodregus, who rode off on his bike, calling out to his brother.

Still wearing face coverings, Daniels, Redinburg, and Griffin then walked toward the home of the "candy man" with plans to rob Mikell. Upon encountering Mikell, Daniels and Redinburg both brandished a gun at him. The group was unable to obtain anything of value from Mikell and began to walk away from him. Mikell called after the group, questioning their actions. Daniels handed a gun to Griffin, who shot Mikell several times. Daniels then proceeded to run to his grandmother's house, while [Griffin and Redinburg] ran in different directions. Mikell died of gunshot wounds.

*Daniels v. State*, 306 Ga. 559, 559-560 (832 SE2d 372) (2019).

In addition, the jury heard evidence that even before Mikell began questioning the group's actions, Griffin approached him with a gun and said, "Give me your money." And, as will be discussed in

more detail below in the context of Griffin's claim of ineffective assistance of counsel, the jury heard Grant testify that Griffin told her after the shooting that he "really didn't mean to kill" Mikell but "should have killed" Rodregus.

1. Although Griffin does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Griffin argues that trial counsel rendered ineffective assistance of counsel by failing to object to Grant's testimony about a recorded telephone conversation Grant had with Griffin at the

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___, ___ (4) (__ SE2d __) (2020). The Court began assigning cases to the December term on August 3, 2020.

behest of police after the shooting.[3] We disagree.

Just before trial began, Griffin's counsel represented to the court that a detective had enlisted the help of a witness (later identified as Grant) by having her telephone Griffin and that the detective had recorded the conversation. Griffin's counsel argued that the detective's recording of that conversation "would be inadmissible without a court order," noting that Grant was a minor.[4] In taking that position, defense counsel apparently relied on OCGA § 16-11-66. That Code section provides in part as follows:

> (a) Nothing in Code Section 16-11-62 shall prohibit a person from intercepting a wire, oral, or electronic communication where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

> (b) After obtaining the consent required by this subsection, the telephonic conversations or electronic communications to which a child under the age of 18 years is a party may be recorded and divulged, and such

---

[3] Griffin also argues that counsel was ineffective for failing to object to a detective's testimony regarding what he overheard of phone conversations between Griffin and Grant. But the trial court ultimately ruled that the detective's testimony about the conversations was inadmissible; none of the testimony by the detective challenged by Griffin here occurred in the presence of the jury.

[4] Testifying at trial more than two years after the murder, Grant said she was 16 years old.

recording and dissemination may be done by a private citizen, law enforcement agency, or prosecutor's office. Nothing in this subsection shall be construed to require that the recording device be activated by the child. Consent for the recording or divulging of the conversations of a child under the age of 18 years conducted by telephone or electronic communication shall be given only by order of a judge of a superior court upon written application, as provided in subsection (c) of this Code section, or by a parent or guardian of said child as provided in subsection (d) of this Code section. . . .

The prosecutor acknowledged that the State could not use the recording given the failure to obtain a court order, but represented that the State planned to have Grant and the detective testify about the conversation. Counsel did not voice any objection to that plan at that time. Grant later testified without objection about the phone call she had with Griffin, which she said took place when she was at the police station.

Griffin argues on appeal that his trial counsel performed deficiently by failing to object to this testimony. He argues that, just as the recording of Grant's conversation with him was inadmissible under OCGA § 16-11-66 (b), Grant's testimony about the conversation was inadmissible as well.

To prevail on a claim of ineffective assistance of counsel, Griffin must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, an appellant must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). An appellant must prove both prongs of the *Strickland* test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." Id. (citation and punctuation omitted). In reviewing either component of the inquiry, we will accept all factual findings by the trial court unless they are clearly erroneous. Id.

The only case that Griffin cites directly in support of his argument that Grant's testimony was inadmissible is *London v. State*, 333 Ga. App. 332 (775 SE2d 787) (2015). But that decision

involved only the admissibility of a *recording* of a conversation and thus could not have held anything about the admissibility of *testimony* about a conversation. Id. at 335-338. Griffin cites no authority holding that failure to comply with the requirements of OCGA § 16-11-66 (b) before recording a conversation means that testimony about the conversation by a party to it is itself inadmissible. Indeed, Georgia appellate case law at least suggests that such testimony is admissible. See *Fetty v. State*, 268 Ga. 365, 366-367 (3) (489 SE2d 813) (1997) (trial court did not err in admitting tape recording of call between teenage defendant and friend of the victim, where friend made the recording independently of police, as "[OCGA] § 16-11-66 applies only to a third party's interception of telephone conversations and does not prohibit the actual parties to such conversations from recording and divulging them"); *Mitchell v. State*, 239 Ga. 3, 3-5 (1) (235 SE2d 509) (1997) (predecessor to OCGA § 16-11-66 did not "prohibit[ ] the actual parties to the conversation from recording or divulging it"); *London*, 333 Ga. App. at 339 (Boggs, J., concurring specially) ("While I agree

that a court order was required for the playing of the recording, I believe it is important to note that a court order would not be required had the State chosen instead to elicit testimony about what the investigator overheard during the interception."). "The failure to pursue a futile objection does not amount to ineffective assistance." *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008). And to the extent that we have not yet squarely decided whether testimony of the sort challenged here is admissible, "trial counsel's failure to raise a novel legal argument does not constitute ineffective assistance of counsel." *Sawyer v. State*, 308 Ga. 375, 383 (2) (a) (839 SE2d 582) (2020); see also *Esprit v. State*, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019) ("A criminal defense attorney does not perform deficiently when he fails to advance a legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law." (citation and punctuation omitted)). Because Griffin has not shown that his counsel performed deficiently by failing to object to Grant's testimony under OCGA § 16-11-66 (b), his claim of ineffective assistance fails.

3. Griffin also argues that the trial court erred in reseating a juror on whom the defense had used one of its peremptory strikes after the State challenged the strike under *Georgia v. McCollum*, 505 U.S. 42 (112 SCt 2348, 120 LE2d 33) (1992). As we explained in *Daniels*, the State challenged several of the defense's peremptory strikes, noting that the defendants (who combined their strikes and offered a joint response to the State's *McCollum* challenge) used all of their peremptory strikes against white jurors. See *Daniels*, 306 Ga. at 563 (2) & nn.4-5. Griffin argues on appeal that the trial court erred in concluding that the strike of a particular juror was not race-neutral and in combining steps two and three of the required analysis pursuant to *Batson v. Kentucky*, 476 U.S. 79 (106 SCt 1712, 90 LE2d 69) (1986). As Griffin acknowledges, however, we rejected those same arguments in disposing of Daniels's appeal. See *Daniels*, 306 Ga. at 563-566 (2). Griffin has given us no reason to revisit that decision here.

*Judgment affirmed. All the Justices concur.*

Decided August 10, 2020.
Murder. Chatham Superior Court. Before Judge Abbot.
*Robert L. Persse*, for appellant.
*Meg E. Heap, District Attorney, Jennifer L. Parker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General.*